UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREAT AMERICAN ASSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 1:18-cv-5422 ) |
| D'APRILE PROPERTIES, LLC, an Illinois Limited Liability Company, and FRAN WALKER; | ) ) ) ) |
| Defendants; | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

The plaintiff, GREAT AMERICAN ASSURANCE COMPANY, by and through its attorneys, by way of its Complaint for Declaratory Relief against the above-captioned defendants, states as follows:

### PARTIES

1. Plaintiff, Great American Assurance Company ("Great American"), is a corporation organized and existing under the laws of Ohio with its principal place of business located in Cincinnati, Ohio. Great American legally transacts insurance business in the State of Illinois and within the geographical jurisdiction of the United States District Court for the Northern District of Illinois.

2. Upon information and belief, Defendant d'Aprile Properties, LLC is an Illinois limited liability company with a principal address of 1732 W. Hubbard Ste. 2A, Chicago, IL.

3. Upon information and belief, the only member of Defendant d'Aprile Properties, LLC is Ryan d'Aprile.

4. Upon information and belief, Ryan d'Aprile is a resident and citizen of the State of Illinois and resides in Western Springs, Illinois.

5. Upon information and belief, Fran Walker is a resident and citizen of the State of Illinois and resides in Chicago, Illinois.

6. Upon information and belief, Fran Walker is an Illinois licensed real estate broker employed by d'Aprile Properties, LLC.

7. Upon information and belief, Fran Walker is also a partner or member in W Squared Investments LLC, which is an Illinois limited liability company with its principal place of business located at 1732 W. Hubbard Ste. 2A, Chicago, IL.

## JURISDICTION AND VENUE

8. This is a Complaint for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, and Federal Rules of Civil Procedure Rule 57, for the purposes of determining a question of actual controversy between the parties as hereinafter more fully appears.

9. This Complaint is currently ripe for adjudication.

10. No Defendant, or member of any Defendant, resides in or is a citizen of the State of Ohio.

11. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §1332 in that the controversy is between citizens of different states and the matter in controversy exceeds $75,000 exclusive of interests and costs.

12. Venue is proper in this Court pursuant to 28 U.S.C. §1391(a).

## FACTUAL BACKGROUND

### The Great American Policy

13. Great American issued a claims made and reported Real Estate Professionals Errors & Omissions Insurance Policy, number RAB4448042-17 for the policy period beginning

July 26, 2017 and ending July 26, 2018 to Named Insured D'Aprile Properties, LLC (the "Policy"). A copy of the Policy is attached as **Exhibit A**.

14. The Policy has a $1,000,000 per claim and $1,000,000 aggregate limit of liability and is subject to a $5,000 per claim deductible.

15. The Policy is subject to the following Insuring Agreement, which provides for coverage, subject to the terms, conditions and exclusions of the Policy, on the following basis:

### I. INSURING AGREEMENT

The **Company** will pay on behalf of an **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **Damages** and **Claim Expenses** as a result of a **Claim** first made against the **Insured** during the **Policy Period** or **Extended Reporting Period** by reason of an act or omission, including **Personal Injury,** in the performance of **Real Estate Professional Services** by the **Insured,** including any **Lock-box Claims** or **Open House Claims,** provided that:

A. no such act or omission, or **Related Act or Omission,** was committed prior to the **Retroactive Date;**
B. prior to the inception date of the first policy issued by the **Company,** and continuously renewed, no **Insured** had a basis to believe that any such act or omission, or **Related Act or Omission,** might reasonably be expected to be the basis of a **Claim**; and
C. the **Claim** must be reported in writing to the Company during the **Policy Period** or within sixty (60) days after the end of the **Policy Period** unless an **Extended Reporting Period** applies:

Except with respect to **Fair Housing Claims** and **Fungi Claims, Claim Expenses** are in addition to the applicable limit of liability.

16. The Policy defines "Damages", pursuant to the endorsement modification of the Policy, as follows:

E. "**Damages**" means any monetary judgment or award which an **Insured** is legally obligated to pay, including punitive or exemplary amounts were insurable by law to the extent such amounts were not assessed as a result of the **Insured's** own misconduct. **Damages** also means a monetary settlement to which the **Company** agrees on an **Insured's** behalf; provided, however **Damages** do not include:

3

2555175v.1

    1.     the return, restitution, reduction, compromise or refund of fees, commissions, expenses or costs for **Real Estate Professional Services** performed or to be performed by an **Insured** and injuries that are a consequence of any fees, commissions, expenses or costs charged by an **Insured**;

    2.     fines, penalties, forfeitures or sanctions;

    3.     the multiplied portion of any multiplied awards;

    4.     the cost of compliance with any order for, grant of, or agreement to provide non-monetary relief, including services or injunctive relief;

    5.     any amounts uninsurable as a matter of public policy.

17.     The Policy defines "Real Estate Professional Services", in part, as follows:

    W.     **"Real Estate Professional Services"** means services performed for others in an **Insured's** capacity as a(n):

    **(1)**     real estate agent or broker

    **(2)**     leasing agent or **Property Manager**

    **(3)**     appraiser or auctioneer of real property;

    **(4)**     expert witness, real estate consultant or counselor, provided such services are limited to the areas specified in items (1) through (3) above;

    **(5)**     **Short Term Escrow Agent, Referral Agent** or notary public; or

    **(6)**     Member of a real estate accreditation, standards review or similar real estate board or committee;

Provided that all necessary licenses or certifications are held by the **Insured** at the time of the act or omission giving rise to the **Claim.**

**Real Estate Professional Services** shall also include the above services performed for others by an **Insured** on or via the **Insured's** internet, e-mail, telecommunications or similar system.

**Real Estate Professional Services** does not include any services as a **Construction Manager.**

18.     The term "**Construction Manager**" is in turn defined by the Policy in Section II.E. as "a person providing the following services in connection with the construction, reconstruction or renovation of real property:

4

2555175v.1

    (1)    Management of facility construction, reconstruction or renovation plans;

    (2)    Development and management of construction, reconstruction or renovation contracts and subcontracts; or

    (3)    Development of loss control and risk management plans in connection with the construction, reconstruction or renovation."

19.    The Policy's definition of "Insured" as used in the Policy provides in pertinent part as follows:

    (1)    the **Named Insured**;

    (2)    any person who is the past or present employee, partner, principal, shareholder, officer, director, member or independent contractor and any of their employees, but only for **Claims** arising from **Real Estate Professional Services** performed on behalf of the **Named Insured**.

20.    D'Aprile Properties is the Named Insured under the Policy.

21.    Fran Walker is an Insured under the Policy.

22.    The Policy contains Exclusion A, the Dishonesty Exclusion, which precludes coverage for any **Claim** under the Policy "based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an **Insured**."

23.    Exclusion A further provides that "[t]he **Company** will provide the **Insured** with a defense of such **Claim** unless and until a final adjudication or finding of fact against, or admission by, such **Insured** establishes that such **Insured** committed such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission."

24.    The Policy also contains Exclusion F, the Property Syndication Exclusion, which precludes coverage for any **Claim** under the Policy "based on or arising out of the formation, syndication, operation or administration of any property syndication, real estate investment trust

5

or any other form of corporation, general or limited partnership or joint venture formed for the purpose of investing in, buying, selling or maintaining real property."

25. The Policy also contains Exclusion G, the Ownership Exclusion, which precludes coverage for any claim "based on or arising out of the actual or attempted sale, purchase, leasing, appraisal, or property management of property developed, constructed or owned by:

**(1)** Any **Insured**;

**(2)** Any entity in which any Insured has a financial interest;

**(3)** Any entity which has a financial interest in the **Named Insured**; or

**(4)** Any entity which is under the same financial control as the **Named Insured**, provided that such financial interest or control existed at the time of the act or omission giving rise to the **Claim**;

provided, however, this exclusion will not apply to any **Claim** based on or arising out of:

(a) the actual or attempted sale of real property that the Insured did not construct or develop and in which the combined ownership interest of all Insureds was less than 20% at the time of the sale or lease;

(b) the actual or attempted sale of **Residential Real Property**, owned by an Insured when all of the following conditions are met in connection with such sale:

    (i) a seller disclosure form was signed by the Insured and acknowledged in writing by the buyer prior to closing;

    (ii) an accredited written home inspection report was issued or waived in writing by the buyer prior to closing; and

    (iii) a state or local board-approved standard sales contract was utilized;

(c) the actual or attempted sale, leasing or property management of the **Insured's Residential Real Property** by another Insured who is not the owner of such **Residential Real Property**;

(d) the actual or attempted sale of real property owned by an **Insured** if the property was acquired by the Insured under a written Guaranteed Sale Listing Contract, and the title is held by the Insured for 12 months

6

2555175v.1

or less and the property was listed for sale continuously by the **Insured** from the date of acquisition to the date of resale; or

(e) the management or leasing of real property in which an **Insured's** or all Insureds' controlling legal or beneficial interest at the time property management services were performed is less than 50%.

## The Underlying Complaint

26. On January 8, 2018, Liz Pearce and Jonathan Meyer (the "Buyers") filed a Verified Complaint against d'Aprile Properties and W Squared captioned *Liz Pearce, et al. v. W Squared Investments, LLC, et al*, Case No.: 2018 CH 00230 in the Circuit Court of Cook County Illinois, Chancery Division (the "Underlying Complaint"). A copy of the Underlying Complaint is attached as **Exhibit B**.

27. The Underlying Complaint arises from the Buyers' attempt to purchase a property located at 2124 N. Central Park in Chicago (the "Property").

28. The Buyers entered into a contract on June 28, 2017 with W Squared in which Pearce/Meyer agreed to buy and W Squared agreed to sell the Property. Closing was scheduled for November 30, 2017. Ex. B at ¶ 9.

29. The Underlying Complaint alleges that during the Attorney Modification period W Squared agreed to an additional paragraph being added that represented that "all improvements made to the Property have been made with the proper permits as required by local ordinances and in compliance with all applicable laws, ordinances and regulations, including, but not limited to, building and zoning codes." Ex. B at ¶ 10.

30. Allegedly, the Property underwent significant renovations by W Squared prior to closing.

31. The Underlying Complaint alleges that prior to closing the Buyers' attorney requested the appropriate City of Chicago building permits from W Squared per the representations. Ex. B. at ¶ 20.

32. The Underlying Complaint alleges that on December 13, 2017, at the closing on the Property, the Buyers' attorney was first informed by W Squared's attorney that no building permits were requested and thus no permits were approved with respect to the renovations on the Property. Ex. B. at ¶ 27.

33. It is alleged that the closing never occurred in December 2017 due to the permit issues.

34. The Buyers were renting the Property prior to the scheduled December 2017 closing and remained in the Property even after the closing failed.

35. On or about December 27, 2017, W Squared filed a Forcible Entry and Detainer Complaint against Pearce/Meyer captioned, *W Squared Investment LLC v. Pearce, et al.*, Case No: 17-M1-721509 in the Circuit Court of Cook County (the "Forcible Entry Complaint"), attempting to remove the Buyers from the Property and take possession.

36. The Underlying Complaint asserts that W Squared has breached the Purchase Contract by failing to deliver the Property to the Buyers at closing in accordance with the purchase contract. Ex. B at ¶ 34.

37. The Underlying Complaint alleges misrepresentations by both d'Aprile Properties and W Squared in connection with the permit issues.

38. The Underlying Complaint alleges that Fran Walker, as an agent of both d'Aprile and W Squared, made misrepresentations regarding the renovations on the property and the permits for said renovations.

8

39. To that end, the Underlying Complaint alleges, *inter alia*, that "Defendant d'Aprile Properties, LLC is a licensed real estate broker that operates from the same offices of Defendant W Squared and, by and through its agent Fran Walker, also a partner of Defendant W Squared, is the listing agent for the Central Park Property." Ex. B at ¶ 8.

40. The Underlying Complaint contains three counts: (1) Specific Performance against W Squared; (2) Consumer Fraud against d'Aprile and W Squared; and (3) Injunction against W Squared.

41. D'Aprile Properties filed a Motion to Dismiss the Underlying Complaint through their independent counsel, Neal Gerber. In the Motion to Dismiss briefing, d'Aprile admits that Fran Walker was "a partner of the Seller, W Squared." *See* Reply in Support of Motion to Dismiss, attached hereto as **Exhibit C**, at 3.

42. In addition, the Illinois Secretary of State confirms that W Squared is an Illinois limited liability company with two managers: (1) Francis J. Walker a/k/a Fran Walker; and (2) McKinley Wells. *See* IL Sec. of State documents attached hereto as **Exhibit D**.

43. D'Aprile Properties tendered the Underlying Complaint for coverage to Great American on February 6, 2018.

44. After receiving the tender of coverage, Great American generally reserved its rights regarding coverage and requested additional information from the Insured. To date, the Insured has not provided the requested information.

## COUNT I
### (Application of Exclusion G, the Ownership Exclusion, of the Policy)

45. Plaintiff reasserts and realleges Paragraphs 1 through 44, as if set forth fully herein as Paragraph 45 of Count I.

46. Exclusion G, the Ownership Exclusion, precludes coverage for any claim "based on or arising out of the actual or attempted sale, purchase, leasing, appraisal, or property management of property developed, constructed or owned by:

1. Any **Insured**;
2. Any entity in which any **Insured** has a financial interest;
3. Any entity which has a financial interest in the **Named Insured**; or
4. Any entity which is under the same financial control as the **Named Insured**, provided that such financial interest or control existed at the time of the act or omission giving rise to the **Claim**;

provided, however, this exclusion will not apply to any **Claim** based on or arising out of:

a) the actual or attempted sale of real property that the **Insured** did not construct or develop and in which the combined ownership interest of all **Insureds** was less than 20% at the time of the sale or lease;
b) the actual or attempted sale of **Residential Real Property**, owned by an **Insured** when all of the following conditions are met in connection with such sale:
   i. a seller disclosure form was signed by the Insured and acknowledged in writing by the buyer prior to closing;
   ii. an accredited written home inspection report was issued or waived in writing by the buyer prior to closing; and
   iii. a state or local board-approved standard sales contract was utilized;
c) the actual or attempted sale, leasing or property management of the **Insured's Residential Real Property** by another **Insured** who is not the owner of such **Residential Real Property**;
d) the actual or attempted sale of real property owned by an **Insured** if the property was acquired by the Insured under a written **Guaranteed Sale Listing Contract**, and the title is held by the Insured for 12 months or less and the property was listed for sale continuously by the Insured from the date of acquisition to the date of resale; or
e) the management or leasing of real property in which an **Insured's** or all **Insureds'** controlling legal or beneficial interest at the time property management services were performed is less than 50%.

47. The Underlying Complaint relates solely to the sale of the Property to the Buyers.

48. The Property was owned by W Squared Investments LLC.

49. The Underlying Complaint alleges that W Squared Investments LLC was renovating the Property prior to and at the time of closing.

50. W Squared Investments LLC has two members: Francis J. Walker and McKinley Wells.

51. Exclusion G specifically precludes coverage for the any claim based on or arising out of the attempted sale of property "owned by" ... "Any entity in which any Insured has a financial interest."

52. Fran Walker is an Insured under the Policy issued to d'Aprile Properties.

53. Fran Walker has a financial interest in W Squared, which owns the Property.

54. None of the exceptions to Exclusion G is triggered.

55. Therefore, on the face of the Underlying Complaint Exclusion G applies to preclude coverage.

56. The application of Exclusion G of the Policy constitutes a case or controversy and Great American Assurance Company anticipates a dispute on this issue.

57. Therefore, Great American Assurance Company is entitled to a declaratory judgment as to the applicability of Exclusion G of the Policy.

WHEREFORE, Plaintiff Great American Assurance Company respectfully requests that this Court:

(A) enter judgment and a declaration that the Policy does not provide defense or indemnity coverage to the Insured for the Underlying Complaint;

(B) award Great American its costs incurred herein; and

(C) award Great American all other relief to which it may be entitled.

## COUNT II
### (Application of Exclusion A, the Dishonesty Exclusion, of the Policy)

58. Plaintiff reasserts and realleges Paragraphs 1 through 44, as if set forth fully herein as Paragraph 58 of Count II.

2555175v.1

59. Exclusion A precludes coverage for any **Claim** under the Policy "based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an **Insured**."

60. Exclusion A further notes that "[t]he **Company** will provide the **Insured** with a defense of such **Claim** unless and until a[n] ... admission by such **Insured** establishes that such **Insured** committed such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission."

61. The Underlying Complaint relates solely to the sale of the Property to the Buyers.

62. The Property was owned by W Squared Investments LLC.

63. W Squared Investments LLC has two members: Francis J. Walker and McKinley Wells.

64. Fran Walker is an Insured under the Policy issued to d'Aprile Properties.

65. The Underlying Complaint alleges that in July 2017 W Squared represented that "all improvements made to the Property *__have been made with the proper permits__* as required by local ordinances and in compliance with all applicable laws, ordinances and regulations, including, but not limited to, building and zoning codes." Ex. B at ¶ 10 (emphasis added).

66. The Underlying Complaint alleges that on December 13, 2017, at the closing on the Property, the Buyers' attorney was first *__informed by W Squared's attorney that no building permits were requested__* and thus *__no permits were approved__* with respect to the renovations on the Property. Ex. B. at ¶ 27 (emphasis added).

67. Therefore, W Squared, and by extension Fran Walker, admitted on December 13, 2017 that it made a misrepresentation when it stated that all improvements had been made with the proper permits as required by law.

2555175v.1

68. All the allegations in the Underlying Complaint relate to the misrepresentations with respect to the improvements and work being done on the property.

69. It is alleged that the closing never occurred in December 2017 due to the permit issues.

70. Accordingly, on the face of the Underlying Complaint Exclusion A applies to preclude coverage, as there was an admission as to the alleged misrepresentations and conduct.

71. The application of Exclusion A of the Policy constitutes a case or controversy and Great American Assurance Company anticipates a dispute on this issue.

72. Therefore, Great American Assurance Company is entitled to a declaratory judgment as to the applicability of Exclusion A of the Policy.

WHEREFORE, Plaintiff Great American Assurance Company respectfully requests that this Court:

(D) enter judgment and a declaration that the Policy does not provide defense or indemnity coverage to the Insured for the Underlying Complaint;

(E) award Great American its costs incurred herein; and

(F) award Great American all other relief to which it may be entitled.

### COUNT III
**(Application of Exclusion F, the Property Syndication Exclusion, of the Policy)**

73. Plaintiff reasserts and realleges Paragraphs 1 through 44, as if set forth fully herein as Paragraph 73 of Count III.

74. Exclusion F, the Property Syndication Exclusion, which precludes coverage for any **Claim** under the Policy "based on or arising out of the formation, syndication, operation or administration of any property syndication, real estate investment trust or any other form of

corporation, general or limited partnership or joint venture formed for the purpose of investing in, buying, selling or maintaining real property."

75. W Squared is an LLC for the purpose of investing in, renovating, maintaining, and selling real properties.

76. D'Aprile Properties and W Squared formed a joint venture for the purpose of investing in the Property, renovating the Property and ultimately selling the Property.

77. Therefore, on the face of the Underlying Complaint Exclusion F applies to preclude coverage.

78. The application of Exclusion F of the Policy constitutes a case or controversy and Great American Assurance Company anticipates a dispute on this issue.

79. Therefore, Great American Assurance Company is entitled to a declaratory judgment as to the applicability of Exclusion F of the Policy.

WHEREFORE, Plaintiff Great American Assurance Company respectfully requests that this Court:

(G) enter judgment and a declaration that the Policy does not provide defense or indemnity coverage to the Insured for the Underlying Complaint;

(H) award Great American its costs incurred herein; and

(I) award Great American all other relief to which it may be entitled.

Respectfully submitted,

By: /s/ Kimberly E. Blair
One of the attorneys for Plaintiff
Great American Assurance Company

Kimberly E. Blair
Joseph J. Stafford
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
55 W. Monroe Street, Suite 3800
Chicago, IL 60603
(312) 704-0550

2555175v.1